JAMES LAMENA, PLAINTIFF-RESPONDENT, v. CAMDEN LOCAL NO. 396 OF THE JOURNEYMEN BARBERS, HAIRDRESSERS, COSMETOLOGISTS AND PROPRIETORS' INTERNATIONAL UNION OF AMERICA, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 10, 1965—Decided June 23, 1965.

Before Judges CONFORD, GAULKIN and KILKENNY.

*Mr. Howard S. Simonoff* argued the cause for appellant (*Messrs. Plone, Tomar, Parks & Seliger,* attorneys).

*Mr. Lee B. Laskin* argued the cause for respondent.

PER CURIAM. Defendant union picketed plaintiff's barbershop in Haddonfield for the purpose of causing or coercing him to join the union and to induce his non-union employees to do so. The Chancery Division enjoined the picketing on the ground that there was no labor dispute and such picketing offended public policy.

We heard defendant's appeal and remanded the matter for further proofs and a determination as to whether the objective of the picketing offended public policy. 80 *N. J. Super.* 203 (*App. Div.* 1963). That opinion contains a comprehensive discussion of the applicable legal principles in this type of unique situation, which we need not repeat here. We have been furnished with a transcript of a supplementary hearing conducted pursuant to the remand, the findings of the trial court and additional briefs. We have also heard further oral argument. For the reasons expressed in our former opinion and this supplement, we are satisfied that the injunction was granted for good cause and should be affirmed.

Defendant local union had a total membership of 248 at the time of the hearing on remand. There were 97 employeebarbers, known as journeymen barbers, 55 employer-barbers, and the remaining 96 were self-employed one-chair barbershop owners, designated proprietor barbers. The local has no constitution or bylaws of its own. It is affiliated with the International Union of Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors. The International Union has a constitution and the defendant local is subject to its provisions. That constitution allows the formation of employers' guilds, as distinguished from local unions, but none has been established within the area embraced by the defendant local union. The right of membership in an employer's guild is restricted to employer-barbers or beauticians who

habitually work with the tools of the trade. An employer-barber who works at the trade and who desires to operate a union shop "must become an employer member of the local union or guild," according to the International constitution. Thus, it is not enough that employees become members of the union. The employer himself, if he works at the trade, must also become a member of the local union, if there is no employer's guild to join, as here, in order to operate a union shop.

The supremacy of the International constitution is indicated by provision therein that any local union violating any of its provisions shall be subject to having charges preferred against it and, if found guilty, subject to fine or suspension, or both. It is also provided:

"Every local union or guild may make its own by-laws, which must, however, be in accordance with this Constitution. * * * *A two-thirds vote of members present* shall be necessary for by-laws or amendments to be adopted. Two copies of all such by-laws must be submitted to the General President for his approval after which one copy will be returned to the local or guild. No amendments thereto shall become effective unless above is complied with." (Italics ours) Article XV, section 1.

The constitution provides that every local union shall regulate the hours of labor, prices and wages in its respective locality. Such regulation is known as the "Working Agreement." The International constitution, article XV, section 5, requires a working agreement to be read at two meetings on separate dates, prior to a third meeting at which a vote is taken. *"A two-thirds vote of members present* shall be necessary for working agreement to be adopted."

The hearing following remand, at which there was testimony only by Vincent J. Ferrante, an employer-barber who is vice-president of defendant local, and Bartholomew Carpella, a barber who is secretary-treasurer of defendant local, indicates the following *modus operandi* of the local. All members, regardless of classification as journeyman barber, employer-barber or proprietor barber, have an equal vote and an equal right to hold office in the union. The working agree-

ment is for one year and is automatically renewed for further periods of one year, in the absence of negotiations for and the formulation of a new working agreement. When a new agreement is sought, the president or chairman of the local selects a chairman of an employers' committee and a chairman of an employees' committee. In turn, each of these committee chairmen apparently picks the remaining members of a committee of six on each side. The committees then confer separately and proposals are made by one committee to the other. If the committees reach an accord, each committee submits the proposed agreement to those in its classification. The one-chair proprietor barbers do not participate in the negotiations, which seems quite remarkable if the agreement does deal with prices and hours. If two-thirds of the employees and two-thirds of the employers, voting separately, approve the proposal, a formal working agreement is executed. The working agreement is not submitted for approval by two-thirds of members present at a general meeting of the local.

If a working agreement is not reached under the foregoing procedure, attempts are made to reconcile the differences by the selection of a mediator. If the mediator fails, the employee-barbers go out on strike. According to Ferrante, there is no right to bring the disagreement before the general membership. If any member of the local attempted to bring the issue before the general membership at a meeting of the local union, the chairman of the local would rule him out of order. Despite this, Ferrante's testimony was confused and confusing as to whether a vote by two-thirds of members present at a general meeting of the local union would bind members in all classifications on basic issues such as wages and hours, in the event a working agreement was not effected by the procedure heretofore employed, as outlined above. The testimony was that never in the history of the union has there been such a disagreement over wages or working conditions as to result in a strike.

We are satisfied that defendant local union has no right to coerce an employer-barber, such as plaintiff, through

the economic pressure of picketing to join a union such as this, in which the employer-barbers are in a substantial minority and no legally binding safeguards exist to insure their independent rights. In any event, the vague informal practices indicated by the testimony are not an adequate substitute for a clear written expression of the independent bargaining rights of the employer members of the union as a class. We reject as completely unjustified the union's contention that the International's constitution, in effect, does provide such independent rights.

One of the basic differences between plaintiff and defendant local is that he wants to close his shop on Mondays to enjoy the two-day closing on Sunday and Monday, but defendant local requires a closing on Wednesdays. It is obvious that plaintiff would be required to comply with the local's regulation or be ousted from membership. If the employer-barbers wanted to keep their shops open from 9 A.M. to 9 P.M. and the journeymen barbers and one-chair proprietor barbers insisted upon hours of 9 A.M. to 6 P.M., and the matter were put to a vote of the entire membership, the employer-barbers could be outvoted. If a strike resulted from a breakdown in negotiations, the journeymen barbers could vote at a general meeting for strike benefits to be paid to them out of the local's treasury, even though the employer-barbers contributed to that common fund. Laying aside the question whether the past *modus operandi* would be satisfactory if made legally binding in the future, upon which we express no opinion, there is simply no local constitution or by-laws providing any protection for a minority group inside this hybrid organization in areas where there are bound to be material differences because of economic self-interest.

Capella testified that the local union would not abide by the provision in the International constitution, which requires a two-thirds vote of the members present to adopt a working agreement, if that referred to the membership generally, rather than to a two-thirds vote in the different classifications of journeymen barbers and employer-barbers. He stated that

the International Union is aware of the local policy and has not objected thereto. However, there has never been even a resolution adopted by the local union setting forth that policy or one by the International Union expressly consenting to it. Judge Wick expressed in his findings a skepticism that the local's past procedure would certainly continue to be used in the future, since it was his belief that it was possible that "pressure from the International Union would thereafter force the Local to adopt the International's method rather than continue to use the informal method of the Local."

Capella gave the startling testimony that if a member of the defendant local union arose and made a motion, the chairman of the meeting would have the power to decide whether it were a reasonable motion and ought to be entertained. As he put it, "If the Chair sees that the motion is not a reasonable motion, he throws the motion out." Thus, in this local, according to its secretary-treasurer, the chairman can entertain a motion "if he wants to," but "don't have to, no." Obviously, the presence of such arbitrary power vested in the chairman, uncurbed by any local written constitution or by-laws and elected by a majority vote of the members generally, most of whom are not employer-barbers, is potentially antagonistic to the interests of employer-barbers.

For the foregoing reasons, we hold that picketing to compel a person to join such a "union" is flagrantly in contravention of our public policy.

We see no useful purpose in considering at this late date in the present controversy whether, technically, this case involves a "labor dispute" within the purview of the Anti-Injunction Act, *N. J. S.* 2A:15–51 *et seq.* That issue is now moot. This case is not comparable with *United States Pipe & Foundry Co. v. United Steelworkers of America,* 59 *N. J. Super.* 240 (*App. Div.* 1960), where we reversed a labor injunction because of egregious disregard of some of the important procedural provisions of the act, even though the union's conduct was also there found illegal.

The judgment of the Chancery Division is affirmed.